He's the court. Walter K. Pyle for the appellant. Mr. Ramirez, the several Supreme Court cases, such as Stovall v. Deno, talk about the dangers of misidentification, and they all talk about whether a, we look to whether an identification procedure is unnecessarily suggested. In Stovall, the court recalls, they brought the accused to a hospital room and the victim identified him. The court recognized that this was suggestive, but it was justified because it was necessary. Nobody knew how long this woman was going to live. It was necessary to get an immediate identification. The court used the word imperative. And so that was suggestive, but it was not unnecessarily suggested. In the case at Barr, the accused was in a patrol car and the victim of the shooting was brought to the scene. In that case, they show a spotlight on the accused as he was in the squad car, he was handcuffed, and as he was getting out of the car, he was identified. Now, a curbside identification is somewhat similar to Stovall, but here there's a difference. Here there was another Hispanic male that was detained at the same time. The question I have really is what Supreme Court case we look to, because it seems that they're inconclusive on the circumstance that you're presenting us. And there's some Ninth Circuit cases, of course, which we might look to, but that aren't necessarily controlling for AEDPA. So I think our challenge is that, you know, your gut says that this is a problem. Now the question is, does the Supreme Court say it's a problem? So what case do you think we look to under AEDPA? Well, I think we look to Stovall because the court talks about this being necessary. And there's a later case, which is not cited in the briefs, but which is discussed in a couple of times in Neal v. Biggar. The other case is Simmons v. United States, where the court again discusses, that was a photographic display and there were several photographs. But the court says, for example, that a misidentification, the likelihood will be increased if only a single photograph is shown. Well, I guess the question that we would be, the rule we would be establishing would be that these one-on-one curbside identifications would be unconstitutional. Is that the rule that you want us to write? Not quite. Okay. Close? How would you write it? I would write it that a curbside identification is not, is, I would say it is probably suggestive. I think all one person show-ups are suggestive to a certain extent. The question is, is it unnecessarily suggestive? And I would suggest that if there is a second person available, as there was in this case, the dark-skinned Hispanic male was the description that was given to the police. There was another Hispanic male that was detained at the same time, but they were not shown together. They were shown individually. But they were, but they did see both of them, and the witness was able to identify one and clearly was able to discard the second. Right. And if they had been presented together, that would be very good evidence that this, this identification would matter. But they were shown contemporaneously. Okay. We didn't, we didn't line both of them up on a wall and have them look at both of them at the, precisely the same time. But the whole incident is contemporaneous. Well, it is very close in time, but once he had identified the defendant in this case, it was unlikely he was going to identify a second person. So I'm suggesting that once a person makes an identification, that's the man, it's very unlikely that he's going to say, what about this other man? Oh. Well, I don't know that that's so unlikely, because in testimony we see, sometimes people say, oh, now that I've seen him, I'm not sure. That's what often happens in, in eyewitness identification, is that people actually end up being unsure. But this guy was sure. Well, he made an immediate identification, and I don't think it was quite clear how certain he actually was. Let me ask you this. Where was, where was your client when the police arrived? When the police arrived? Yeah. He was fixing a, a truck. He was, he was trying to repair the, a, a, a pickup truck. He and this other Hispanic male were repairing. It wasn't a pickup truck. It was a. A truck, a tow truck perhaps. A tow truck. Yes. You know, so, what happened here was the, the eyewitness was up on a balcony. He heard some noise. He looked down, and he saw a guy with a crowbar that was broke or was about to break a window in a vehicle that belonged to this observer's girlfriend. His friend, yes. And he, he shouted down, and they had a tow truck there. And then the person in the driver's side kind of turned and pointed a gun and fired it, right? Right. And then they, then they took off. Right. And then, then he called the police. And then, then they came back, right? They. They came, they turned around and came back. And, and. Drove by. Yeah. Not too much time elapsed. How much? A couple minutes or so? It's, I don't think it's clear, but a short period of time. A short period of time. When they came back, they had hooked up somebody's boat to the back of the tow truck, you know. I mean, they were, they were having a good day. And, and then as they were driving down the street, the boat got loose and crashed into a car. Yeah. So, and then he was out there fixing the truck. Correct. Pretty good evidence he had something to do with it. Well, he may have had something to do with it. I think that question, that issue then would come up. Was he from the auto club repairing the pickup, the tow truck? Well, we don't know. We know the truck, the truck or a similar truck had been loaned to him earlier in the evening. So, the circumstances are not entirely clear as to how he came to be in the vicinity of that truck. But I suggest that doesn't really focus, that issue is another issue that would be weighed. But then the officer, when they, when they brought him to the defendant who was in the backseat of the car and they applied the light in there, the officer told him that they had someone there. But the fact that the person is there, he shouldn't put into his mind that this is the person. This is true. He did that too. This is true. So, so I'm suggesting that, I'm suggesting that what makes this an improper show up is that it was unnecessary to show one person without a second person who was available. The. Well, the California, the California Court of Appeal says that this was, that this was just a standard curbside. There was nothing unusual about, about this lineup. Yes. And that is the judgment that under AEDPA, we have to overturn only if it's, only if it's, you know, a marked departure from established Supreme Court precedent. What, what, what's the precedent here that this is, that the California Court of Appeal has just wildly ignored? Well, I'm saying it was, what they've ignored is the fact that there's a second person available. Yeah, but that, but the Supreme Court has never said that if you have a second person available, that you have to put them in the lineup. What you're asking us to do is to create a new rule which says if you have a second person available, then you have to put them into a curbside lineup. Of course, if you don't have a second person available, then you can go ahead and proceed with the, with the one person that you have. That doesn't sound like much of a constitutional rule, and it doesn't sound like anything that's familiar. Well, it, I mean, the Supreme Court doesn't have to make a specific ruling that this is the rule. But when we read all these cases together, like Stovall and Simmons, what we see is a preference for something more than a single person show up. And I think that is sufficient. I think the Supreme Court has indicated sufficiently in cases like Stovall and cases like Simmons. But even a constitutional preference for more than a single person in a lineup isn't exactly a rule that the California Court of Appeal has ignored. Well, I think they've ignored the fact that there was, I think when they applied this rule, they took in, they did not take into consideration that there was a second person available for the, for the show up. Who was shown to the witness who contemporaneously said this is not the man. Well, I would say subsequently, but at closer in time. So are you really saying that that's what makes it unnecessarily suggestive? In other words, it's the application of that rule to these facts. Yes. I would say in Stovall, if the second person had been available, perhaps the decision of the Supreme Court would have said different things. They might have said, I suggest they would have said. Of course, the problem with the second person available is then we go down the slippery slope because he wasn't quite Hispanic enough or he didn't have a hat and this guy had a mustache. And so it seems to me that that's probably why the, we're not supposed to rewrite these Supreme Court rules because if we were to write such a rule, I think we'd run headstrong into a whole lot of other constitutional problems. Well, there's always a problem when the Supreme Court says we review the totality of the circumstances. And I don't really know what I can say to the Court how to deal with that. It's simply, it's in all these cases, totality of the circumstances, totality of the circumstances. And I'm suggesting in a case where there is somebody else available, so it doesn't have to be, I'm saying there should be a distinct. And I think the Supreme Court cases talk about a distinct disinclination for single person show-ups. And I think that is, that is what the Supreme Court is getting across. Don't have a single person show-up if you have an alternative. And then here before, before they went to that apartment and break this, broke the window of the car with a crowbar, they were, this, this tow truck was down by the dock in San Diego, huh? And there were some kids with skateboards. And they didn't like those kids and they wanted the skateboards. And they shot at them. And the kids ran away, but they got two skateboards. So it wasn't all in vain. It was perhaps despicable conduct. But that doesn't really focus on the original. Oh, no, I know that. I know that. But it seems that, you know, even if there was a problem, that the evidence is pretty strong. Well, then we would have to get into the second question. Was this admission of unreliable evidence under Chapman, was it harmless beyond a reasonable doubt? That issue has not really been addressed. Right. An interesting case. Okay. Thank you. Thank you. Good morning. May it please the Court. Megan Beal, Deputy Attorney General, on behalf of Appellee Warden. Your Honors, the controlling precedent under ADIPA is from Neal v. Biggers, quoted again in Manson v. Braithwaite at page 106. The admission of evidence of a show-up without more does not violate due process. And that's what happened here. There was a show-up. It's understood that curbside lineups are suggestive in one sense, but also necessary and important. And, in fact, in this case, the police did give the specific admonition to the witnesses before they saw the two detainees. It's just as important to release someone who's innocent as to catch someone who may have committed the crime. And there were two Hispanic males who were shown to the witness in the same conditions, not contemporaneously, but not exactly at the same time, but both were shown to the witness, Malacate, in front of the headlights of the police car. It cannot be said that the State court determination was objectively unreasonable because it showed the two Hispanic men one at a time rather than next to each other. Under ADEPA, there's absolutely no showing that the State court determination was objectively unreasonable, and certainly it was not contrary to Supreme Court precedent. Did the police do anything to alter the appearance of either of the gentlemen? Did they put a coat on one or put glasses or a hat or anything that would be distinctive that would mark the man in any way? There's no evidence of that, Your Honor. In fact, there's not even actually any record-sufficient evidence of the condition of the second detainee. He was described as a suspect detained by the police, but it's not even clear if he also had handcuffs as well as the first person. The first person, Ramirez in this case, didn't have a shirt on, but there's no evidence of what he was wearing or not wearing while he was in the truck when seen earlier. But there is no evidence that the police did anything in any way to make Ramirez look any more like the suspect than the second detainee who was there. So there is no evidence that there was anything unduly suggestive here. Again, the curbside lineup, by its very nature, is suggestive in some ways. However, in this case, however, the Supreme Court has permitted the use of curbside lineups and the admission of identifications from curbside lineups. And in this case, there was – it was necessary and there was nothing unduly suggestive about it, particularly in light of the admonition given by the police. Okay. Thank you. So, thank you. Any rebuttal? Does the Court have any questions? I have no further questions. Then I'll submit it. Thank you. The matter will stand submitted. And now we come to FTC v. Garvey.
judges: Pregerson, McKeown, Bybee